UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Eclipse Sportswire, | Case No. 21-cv-1638 (WMW/BRT) |
| Plaintiff, | **AMENDED ORDER** |
| v. | |
| Sports Moments Plus, LLC, and John Binetti, | |
| Defendants. | |

---

Before the Court is Plaintiff Eclipse Sportswire's (Eclipse) motion for default judgment against Defendants Sports Moments Plus, LLC (SMP), and John Binetti. (Dkt. 14.)  For the reasons addressed below, Eclipse's motion for default judgment is granted in part and denied in part.

## BACKGROUND

Eclipse is an editorial photography entity that specializes in horse sports photography.  SMP is a corporation headquartered in Savage, Minnesota, that operates a retail website that sells photographs of sporting events.  Binetti owns SMP and lives in Scott County, Minnesota.

On July 2, 2018, Eclipse registered two photographs of a thoroughbred horse race (the Works) with the Register of Copyrights.  The Works were assigned registration numbers VA 2-109-184 and VA 2-109-244.  On or about July 20, 2020, Eclipse discovered that Defendants had listed the Works for sale on SMP's website.  Eclipse alleges that Defendants were neither licensed by nor obtained permission from Eclipse to use, copy,

distribute, or display the Works. Eclipse notified Defendants of their unauthorized use of the Works on August 12, 2020, and on August 28, 2020. On July 16, 2021, Eclipse commenced this lawsuit against SMP and Binetti, advancing three claims to relief. Count I alleges copyright infringement. Count II alleges vicarious copyright infringement by SMP. Count III alleges common-law unfair competition.

Eclipse served the summons and complaint on Binetti on August 3, 2021, and served the summons and complaint on SMP on August 23, 2021. On October 20, 2021, Eclipse applied for entry of default, which the Clerk of Court entered on October 22, 2021. Eclipse now moves for default judgment.

## ANALYSIS

To obtain a default judgment, a party must follow a two-step process. The party seeking a default judgment first must obtain an entry of default from the Clerk of Court. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Here, Eclipse sought entry of default, which the Clerk of Court entered against Defendants on October 22, 2021. The entry of default is supported by the record, which reflects that Defendants were properly served with the complaint and summonses and failed to answer or otherwise respond to Eclipse's complaint.

After default has been entered, the party seeking affirmative relief "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). Upon default, the factual allegations in the complaint are deemed admitted except those allegations relating to the

amount of damages. Fed. R. Civ. P. 8(b)(6); *accord Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010). But "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Murray*, 595 F.3d at 871 (internal quotation marks omitted); *accord Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010). A district court also must ascertain the amount of damages before entering a default judgment. *See Hagen v. Sisseton-Wahpeton Cmty. Coll.*, 205 F.3d 1040, 1042 (8th Cir. 2000) ("[A] default judgment cannot be entered until the amount of damages has been ascertained." (internal quotation marks omitted)). A party seeking a default judgment must prove its damages to a reasonable degree of certainty. *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 819 (8th Cir. 2001). A district court may determine damages by computing from the facts of record the amount that the plaintiff is lawfully entitled to recover and enter judgment accordingly. *Pope v. United States*, 323 U.S. 1, 12 (1944).

The Court addresses, in turn, the sufficiency of the facts Eclipse alleges in support of its claims, damages, pre- and post-judgment interest, and attorneys' fees and costs.

### I.     Copyright Infringement (Counts I and II)

To prevail on a copyright-infringement claim, a plaintiff must prove: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *accord Windgate Software, L.L.C. v. Minn. Computs., Inc.*, 504 F. Supp. 2d 582, 588 (D. Minn. 2007). When accepted as true, the facts Eclipse alleges in the complaint set forth a valid claim for copyright infringement against both SMP and Binetti.

## II. Unfair Competition (Count III)

"[U]nder Minnesota law, unfair competition is not a tort with specific elements, . . . rather, it describes a general category of torts [that] courts recognize for the protection of commercial interests." *LensCrafters, Inc. v. Vision World, Inc.*, 943 F. Supp. 1481, 1490 (D. Minn. 1996) (internal quotation marks omitted). A common-law unfair-competition claim must identify the underlying tort that is the basis for the claim. *Id.* "[I]f the underlying tort is duplicative of another Count of the Complaint, the claim for unfair competition cannot stand." *Id.* Copyright infringement is a tort. *Johnson v. Salomon*, No. 4-73 Civ 536, 1977 WL 22758, at *39 (D. Minn. May 25, 1977). Because Eclipse's unfair-competition claim is duplicative of its copyright-infringement claim, the Court denies default judgment on Eclipse's unfair-competition claim.

## III. Damages

Having alleged facts that set forth claims for copyright infringement against both SMP and Binetti, Eclipse next must prove damages. A party seeking a default judgment must prove its damages to a reasonable degree of certainty. *Everyday Learning Corp.*, 242 F.3d at 819. A district court may determine damages by computing from the facts of record the amount that the plaintiff is lawfully entitled to recover and enter judgment accordingly. *Pope*, 323 U.S. at 12.

Eclipse seeks statutory damages. Under the Copyright Act, a "copyright owner may elect . . . to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action . . . in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). Alternatively, when the

4

copyright owner proves, and the court finds, that infringement was committed willfully, the court, in its discretion, may increase the award of statutory damages to a sum of not more than $150,000. 17 U.S.C. § 504(c)(1). Statutory damages are "a substitute for unproven or unprovable actual damages" and are "arguably the quintessential equitable remedy, invoked when the legal remedy is inadequate." *Cass Cnty. Music Co. v. C.H.L.R., Inc.*, 88 F.3d 635, 643 (8th Cir. 1996). A plaintiff seeking statutory damages, therefore, need not present proof of actual damages. *See Capitol Recs., Inc. v. Thomas-Rasset*, 692 F.3d 899, 909 (8th Cir. 2012). Within the statutory limits, "the assessment of [statutory] damages lies within the Court's sound discretion and sense of justice." *Halnat Publ'g Co. v. L.A.P.A., Inc.*, 669 F. Supp. 933, 937 (D. Minn. 1987). "In determining the proper measure of statutory damages, the Court considers what is just in a particular case, the nature of the copyright, and the circumstances of the infringement." *Gregerson v. Vilana Fin., Inc.*, No. 06-1164 ADM/AJB, 2008 WL 451060, at *6 (D. Minn. Feb. 15, 2008).

Because default has been entered, the allegations in Eclipse's complaint must be taken as true. Eclipse alleges willful infringement, and the Court must accept that allegation as true. *Cf. Aries Music Ent., Inc. v. Angelica's Rec. Distribs., Inc.*, 506 F. App'x 550, 552 (9th Cir. 2013) (explaining that because plaintiff "pled that the defendants engaged in continuing willful infringement of its copyrights . . . , the district court's default judgment includes an implied finding of willfulness"). Eclipse, therefore, is entitled to an award of statutory damages for willful infringement. Eclipse requests that the Court either award the maximum statutory damages of $150,000 per infringed work or award damages in the amount of $50,000—that is, 10 times the fair market value of the Works.

5

In calculating damages for willful infringement, a court may award any amount up to the statutory maximum—including by using multipliers of the fair market value of the copyrighted work—to arrive at a damage award that properly compensates the plaintiff for the infringement and deters the defendant from committing future infringement. *See, e.g.*, *Tetra Images, LLC v. Grahall Partners, LLC*, No. 19-CV-05250 (PMH), 2021 WL 2809566, at *4 (S.D.N.Y. July 6, 2021) (awarding statutory damages five times the fair market value in light of defendant's "willful infringement alongside its refusal to respond to Plaintiff's correspondence or participate in this action in any way" paired with "the need to deter future infringement"); *Gregerson*, 2008 WL 451060, at *6 (awarding $10,000 in statutory damages for willful infringement of a photograph with the fair market value for use of approximately $1,756); *Warner Bros. Ent. Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1074 (C.D. Cal. 2004) (awarding the statutory maximum of $150,000 per work given the defendant's "egregious conduct," which defendant "compounded by failing to proffer any defense or participate in discovery or engage in settlement negotiations"); *cf. Leonard v. Stemtech Int'l Inc*, 834 F.3d 376, 394 (3d Cir. 2016) (affirming jury verdict of actual damages wherein damages were multiplied three to five times for scarcity of the works and 3.75 to 8.75 times for exclusivity of the works).

Here, Defendants were on notice of their infringement nearly one year before Eclipse filed this lawsuit. Defendants did not cure their infringement thereafter, and they failed to proffer any defense in this lawsuit. Eclipse estimates that a license to display the Works would have cost approximately $2,500 per photograph. Eclipse requests either the statutory maximum for each image ($150,000 per work, $300,000 total) or 10 times the

6

$2,500 licensing fee for each image ($25,000 per work, $50,000 in total) whereby the licensing fees would be multiplied five times for deterrence and five times for reputational harm. The Court concludes that the facts alleged herein are not so egregious as to merit awarding the statutory maximum of $300,000 for the two photographs. Instead, the Court awards Eclipse $25,000 in statutory damages, which is five times the license fee for each image. *See Gregerson*, 2008 WL 451060, at *6 (awarding statutory damages of approximately five times the fair market value for willful infringement of a photograph); *Tetra Images*, 2021 WL 2809566, at *4 (awarding statutory damages five times the fair market value for defendant's willful infringement and its refusal to participate in the litigation). This amount serves the interests of justice by acknowledging both the need to compensate Eclipse for Defendants' willful copyright infringement and the need to deter Defendants from future infringement.

### III.   Attorneys' Fees and Costs

Eclipse also requests attorneys' fees and costs. In its discretion, a court may award reasonable attorneys' fees and costs to a prevailing party in a copyright-infringement action. 17 U.S.C. § 505. This discretion must be "exercised in an evenhanded manner by considering factors such as whether the lawsuit was frivolous or unreasonable, the losing litigant's motivations, the need in a particular case to compensate or deter, and the purposes of the Copyright Act." *Killer Joe Nevada, LLC v. Does 1-20*, 807 F.3d 908, 911 (8th Cir. 2015) (quoting *Action Tapes, Inc. v. Mattson*, 462 F.3d 1010, 1014 (8th Cir. 2006)). An infringer's "blatant disregard for the law warrants an award of costs and attorneys' fees."

*Tempo Music, Inc. v. Christenson Food & Mercantile Co.*, 806 F. Supp. 816, 821 (D. Minn. 1992).

The Eighth Circuit applies the lodestar method to calculate a reasonable attorney's fee. *Pinkham v. Camex, Inc.*, 84 F.3d 292, 294 (8th Cir. 1996). Under this method, the lodestar amount is presumed to be the reasonable fee to which counsel is entitled. *McDonald v. Armontrout*, 860 F.2d 1456, 1458 (8th Cir. 1988). To calculate the lodestar amount, a district court multiplies the number of hours reasonably expended by a reasonable hourly rate, *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), which is "in line with [the] prevailing [rate] in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). The party seeking an attorneys' fees award bears the burden to establish entitlement to an award with documentation that addresses the nature of the work and the appropriateness of the hourly rates and hours expended. *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002) (citing *Hensley*, 461 U.S. at 437).

Here, Eclipse requests $11,426.50 in attorneys' fees and $787 in costs. In support of Eclipse's requested amount, Eclipse provides billing records that suggest this figure includes 37.1 hours of work performed by two attorneys, a paralegal, and a client services liaison at SRIPLAW, P.A. The hourly rates for these services range from $175 to $495. The billing records also suggest that Eclipse's attorneys' fees figure includes 4.2 hours of work performed by attorney Nathan M. Hansen, at an hourly rate of $350.

A.     **Hourly Rates**

Although Defendants do not challenge the reasonableness of the hourly rates charged by Eclipse's counsel, the Court nonetheless must confirm that the claimed hourly rates are reasonable. A district court may rely on its experience and knowledge of prevailing market rates to determine whether the claimed hourly rate is reasonable. *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005). A reasonable fee is "one that is adequate to attract competent counsel, but . . . [that does] not produce windfalls to attorneys." *McDonald*, 860 F.2d at 1458 (quoting *Blum*, 465 U.S. at 897). The "skill, experience, and reputation of counsel are key factors bearing on a rate's reasonableness." *Id.* at 1459. Here, Eclipse seeks compensation for hours billed by one partner, one associate, one solo practitioner, one paralegal, and one client services liaison. Joel Rothman is the managing partner at SRIPLAW, has been practicing law for approximately 30 years, and has an hourly rate of $475.[1] Matthew L. Rollin is an associate at SRIPLAW, has been practicing law for approximately two years, and has an hourly rate of $300. Nathan Hansen is a solo practitioner who has been practicing law in Minnesota for approximately 19 years and has an hourly rate of $350. Jamie James is a paralegal at SRIPLAW and has an hourly rate of $200. Connor Williams is a client services liaison at SRIPLAW and has an hourly rate of $175. The Court has considered these facts along with the Court's experience and

---

[1]    Although Eclipse's counsel did not submit information regarding the experience, qualifications, skill, and reputation of its attorneys, paralegal, and client services liaison, the Court takes judicial notice of the law firms' websites.

knowledge of prevailing market rates, which are consistent with the hourly rates claimed by Eclipse.

The Court concludes that Eclipse's claimed hourly rates are reasonable and consistent with the rates in this community for similar services provided by lawyers of comparable experience.

### B. Number of Hours Expended

Eclipse requests $11,426.50 in attorneys' fees for 41.3 hours of work performed in this matter.  Although Defendants do not challenge the reasonableness of the number of hours Eclipse's attorneys expended, the Court must independently evaluate the reasonableness of the number of hours expended.  When conducting a lodestar analysis, a district court should exclude "hours that were not reasonably expended." *Hensley*, 461 U.S. at 434 (internal quotation marks omitted).  As such, "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id.*  When awarding attorneys' fees, "district courts must be mindful of both redundant and excessive hours." *Orduno v. Pietrzak*, 932 F.3d 710, 720 (8th Cir. 2019) (internal quotation marks omitted).  Here, the record reflects that Eclipse's attorneys, paralegals, and support staff spent a total of 41.3 hours drafting a demand letter, the complaint, local counsel agreements, and the motion for default judgment; handling billing for service of process; and communicating internally and with third parties.

Eclipse's billing records include 2.4 hours of time that Eclipse's client services liaison Connor Williams spent on "email[s] sent/reviewed."  Incomplete or imprecise

billing records that prevent a district court from meaningfully reviewing the request for excessive, redundant, or otherwise unnecessary hours "may warrant a reduced fee." *H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir. 1991). Eclipse's billing records are inadequate to allow the Court to assess the reasonableness and necessity of the 2.4 hours Williams worked on this case. The Court, therefore, strikes the 2.4 hours Williams worked on this matter, which amounts to $420 in stricken attorneys' fees.

Eclipse's billing records include 1.6 hours of time that Eclipse's paralegal Jamie James expended on "[m]atter admin." As addressed above, a court may reduce the amount of an attorneys' fees award when incomplete or imprecise billing records prevent the court from meaningfully reviewing the request. *Id.* Eclipse's description of the "[m]atter admin" work James performed is inadequate for the Court's assessment of the reasonableness and necessity of this work. The Court, therefore, strikes 1.6 hours of James's work, which amounts to $320 in stricken attorneys' fees.

Eclipse's billing records include 4.85 hours of work that Eclipse attorneys Rollin and Hansen and paralegal James expended on unidentified email correspondence. A court may reduce fees when billing records are incomplete or imprecise. *Id.* at 260. Although the billing records suggest that other time Rollin, Hansen, and James expended on email correspondence was related to specific aspects of the litigation of this case, 4.85 hours of email correspondence are not tethered to any particular development in the case. The Court, therefore, cannot assess the reasonableness and necessity of this work. For this reason, the Court strikes the following non-specific email correspondence detailed in the billing records: 2.7 hours of Rollin's work (totaling $810 in stricken attorneys' fees), 1.25 hours

11

of Hansen's work (totaling $437.50 in stricken attorneys' fees), and 0.9 hours of James's work (totaling $180 in stricken attorneys' fees).

For the reasons articulated above, the Court strikes the requested attorneys' fees sum by $2,167.50, and awards Eclipse $8,994 in attorneys' fees.

### C. Costs

Finally, Eclipse seeks $787 in costs. The record includes a table titled "Expenses" that lists the expenses Eclipse incurred in litigating this case. Eclipse expended $402 on filing the complaint in this District, $100 on filing a pro hac vice application for attorney Matthew Rollin, and $285 on service of process of the summonses and complaint. Defendants do not challenge these costs, which are reasonable. The Court awards costs in the amount of $787.

### IV. Pre- and Post-Judgment Interest

Eclipse requests pre- and post-judgment interest. A prevailing party has a right to post-judgment interest under 28 U.S.C. § 1961. Post-judgment interest begins to accrue on the day judgment is entered and accrues on a plaintiff's total award, including costs and attorneys' fees, until the judgment is satisfied. *Jenkins by Agyei v. Missouri*, 931 F.2d 1273, 1275 (8th Cir. 1991) ("The phrase 'any money judgment' in section 1961(a) is construed as including a judgment awarding attorneys' fees."); *see, e.g.*, *Minn. Voters All. v. City of Saint Paul*, No. 19-cv-0358 (WMW/HB), 2021 WL 1100901, at *7 (D. Minn. Mar. 23, 2021). Here, post-judgment interest is awarded at 3.11 percent per annum, "a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the

12

Board of Governors of the Federal Reserve System, for the calendar week preceding." 28 U.S.C. § 1961(a).

Eclipse also seeks pre-judgment interest. But Eclipse does not provide, nor has the Court found, binding authority that permits an award of pre-judgment interest. Eclipse cites several cases from outside this Circuit in which federal courts have awarded pre-judgment interest in copyright cases. Although the United States Court of Appeals for the Eighth Circuit and Courts in this District have awarded post-judgment interest in copyright cases, these courts have not extended a plaintiff's right to post-judgment interest to include pre-judgment interest. *See, e.g.*, *Broad. Music, Inc. v. Tavern 129 LLC*, No. 20-CV-435 (ECT/DTS), 2021 WL 2390248, at *3 (D. Minn. June 11, 2021) (stating that "[p]laintiffs have a right to post-judgment interest under 28 U.S.C. § 1961"); *cf. Jenkins*, 931 F.2d at, 1275 (explaining that, under 28 U.S.C. § 1961, a plaintiff is entitled to post-judgment interest). And this Court declines Eclipse's invitation to do so.

For these reasons, the Court grants Eclipse's request for post-judgment interest and denies Eclipse's request for pre-judgment interest.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Plaintiff Eclipse Sportswire's motion for default judgment, (Dkt. 14), is **GRANTED IN PART AND DENIED IN PART**.

2. Plaintiff Eclipse Sportswire is awarded damages, attorneys' fees, costs, and interest as follows:

13

      a.      $25,000 in statutory damages pursuant to 17 U.S.C. § 504(c)(2);

      b.      $ 9,259 in attorneys' fees;

      c.      $787 in costs; and

      d.      post-judgment interest on the total judgment amount of $35,046 calculated pursuant to the formula set forth in 28 U.S.C. § 1961.

3.      The Clerk of Court shall enter judgment in the amount of $35,046 against Defendants Sports Moments Plus, LLC, and John Binetti, and in favor of Plaintiff Eclipse Sportswire.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: July 19, 2022                                s/Wilhelmina M. Wright
                                                                  Wilhelmina M. Wright
                                                                  United States District Judge